UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10375-RWZ |
| | ) | |
| MICHAEL PRIDGEN | ) | |
| | ) | |

MOTION TO SUPPRESS STATEMENTS

Defendant, Michael Pridgen, moves this Court to suppress statements allegedly made by him to Boston Police officers on October 29, 2004, as well as any fruits of those statements.

Defendant's statements must be suppressed on the following grounds:

1. Defendant was interrogated, while in custody, without first being given the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). Therefore, the statements must be suppressed. Id. at 492.

2. Defendant did not knowingly, voluntarily, and intelligently waive his constitutional rights.

3. The statements were fruits of an unlawful arrest and detention.

4. The statements were not voluntary.

STATEMENT OF FACTS

On October 29, 2004, Mr. Pridgen was walking next to a house on Warren Place in Roxbury, Massachusetts. There had been a shooting reported a few minutes earlier, in which shots allegedly were fired but no one was hit, in front of the Roxbury District Court, a short distance away. A Boston Police officer, with his gun drawn and held out in front of him, ran toward Mr. Pridgen, yelling, "Where's the gun?" repeatedly. He hit Mr. Pridgen in the face with

the gun and ordered him to turn around and to get down on the ground on his knees. Mr. Pridgen complied. The officer then hit Mr. Pridgen in the face at least two more times, still asking him, "Where's the gun?"

The first officer was quickly joined by a second officer, and Mr. Pridgen, still on his knees, was handcuffed with his hands behind him.

As Mr. Pridgen was on the ground he was asked numerous questions by the officers, such as where the gun was. He also recalls that when he was taken to a police cruiser, he was asked if somebody else ran into the house and where he was coming from.

In the Boston Police incident report provided to the defense, it is alleged that Mr. Pridgen stated "during his arrest" that "he went to the rear of 8 Warren Place to use the toilet," that he said he "ran back to the house after he heard the shots and while in the back decided to use the construction toilet," and that "he was sure that there was no body [sic] in the house, because he didn't see anyone else while he was in the rear of the house."[1]

At the police station, it is alleged that Mr. Pridgen made an additional statement to another officer, that "he had just gotten off the bus and was going to the store, but then he decided to use the toilet." Mr. Pridgen did sign a Miranda Waiver form at the station, but he recalls that when he was taken to a room to speak with some officers, he declined to speak with them.

---

[1] The Assistant United States Attorney assigned to this case, Donald Cabel, has told defense counsel orally that he intends to introduce these statements, in addition to the statement the defendant allegedly made at the police station during booking, at trial. It is defense counsel's understanding that these statements are the only statements the government intends to introduce.

<u>REQUEST FOR EVIDENTIARY HEARING</u>

Defendant requests an evidentiary hearing on this motion.

                          MICHAEL PRIDGEN
                          By his attorney,

/s/ Page Kelley
Page Kelley
  B.B.O. #548237
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

Date: June 7, 2005

                    UNITED STATES DISTRICT COURT

                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
                                )        CRIMINAL NO. 04-10375
                                )
MICHAEL PRIDGEN                 )


             AFFIDAVIT IN SUPPORT OF MOTION TO SUPPRESS

I, Michael Pridgen, depose and state:

1. On October 29, 2004, I was walking near a house on Warren Place in Roxbury, Massachusetts.

2. A man ran toward me with a gun stretched out in front of him, pointing the gun at me. He yelled at me, "Where's the gun?" and as he ran up to me, he hit me on the side of my face with the gun.

3. He told me to turn around so I was not facing him and to get down on my knees, which I immediately did. I did not fight with him or try to get away. I was not free to leave. I was not able to even stand up or move at all.

4. He hit me at least two more times in the face with the yelling, "Where's the gun?"

5. Another man came up and they handcuffed me with my hands behind my back. Then they made me stay face down on the ground

6. I was asked a lot of questions such as "Where's the gun?" and "Who else is back here?" "Where were you coming from?" and "Is anybody in the house?"

7  At one point, the second man was smelling my hands

8. At one point, the second man was walking around the portable john and asking the first one to look at my shoes.

9. As they took me to the cruiser they were saying to me, "If there's a gun in the john we're going to hurt you."

10. While I was in the cruiser they asked me, "Did somebody else run in the house?" and "Where were you coming from?"

11. At the station I signed for my rights. I was taken to a room to talk to some officers and when I got there I said no, did not want to talk to them.

12. My attorney, Page Kelley, helped me with this affidavit. She listened to me explain what happened and wrote it up for me It is not a complete account of everything that happened to me that day, it is written for the purposes of this motion.

Signed under pains and penalties of perjury,

_Michael Pridgen_     6-4-05
Michael Pridgen        Date