UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10375-RWZ |
| | ) | |
| MICHAEL PRIDGEN | ) | |
| | ) | |

POST-HEARING MEMORANDUM
IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

I.  Facts

The Court held an evidentiary hearing on defendant Michael Pridgen's Motion to

Suppress Statements on January 25, 2006.  At the hearing, two witnesses testified: Boston

Police Officers Michael Ross and Juan Seoane.[1]  Both witnesses testified that on October 29,

2004, they were in the Roxbury District Court when they heard shots fired outside.  They ran out

of the building and followed the instructions of several civilians which led them to a house on

Warren Place, where they encountered the defendant walking on the driveway.  The officers

"took Mr. Pridgen to the ground," handcuffed him, and with one of them placing his knee in Mr.

Pridgen's back, held him there face-down.

Officer Seoane testified that shortly thereafter he walked Mr. Pridgen to a cruiser and

made him stand behind it, where Officer Seoane read him *Miranda* rights and asked him

questions concerning what he was doing at the scene of his arrest.  Mr. Pridgen was not free to

leave; he was under arrest at the time Officer Seoane questioned him.  Mr. Pridgen made several

statements in response to the officer's questioning.

---

[1]Counsel does not yet have a transcript of the hearing, so statements concerning the witnesses'
testimony are from memory and notes taken during the hearing.

Officer Ross testified that later, in the police station, he read Mr. Pridgen his rights from a poster on the wall in the booking area.  Officer Ross then proceeded to question Mr. Pridgen, and Mr. Pridgen made further statements explaining what he was doing just prior to being arrested, statements which arguably contradicted his earlier statements to Officer Seoane.  Officer Ross said that the defendant signed a *Miranda* form <u>after</u> he had made the statements to Officer Ross.  The form is attached as exhibit A.

II.  <u>Argument</u>

A.  <u>The government has not proven that the defendant was read his rights prior to being</u> <u>interrogated</u>.

The officers' testimony that they each read the defendant his rights is not credible.  Officer Seoane testified that he read the defendant his rights while the defendant was standing at the back of a cruiser.  Officer Ross testified that he read the defendant his rights again at the station as he was being booked.  Officer Ross testified that he read the defendant his rights even though it was not his duty to do so, and even though he acknowledged that Officer Linskey, the booking officer, had the defendant sign a written *Miranda* form <u>after</u> Officer Ross finished questioning him.  Officer Seoane testified that he was in the booking area for part of Mr. Pridgen's booking process but said nothing about hearing Officer Ross give him his rights.  Neither officer was responsible for formally questioning the defendant about the incident, and both of them testified that, incredibly, they asked the defendant only what he was doing at the place of his arrest and nothing else, even though according to their testimony the defendant was apparently willing to answer questions.

The government's response to the defendant's motion is attached as exhibit B.  It contains no suggestion that the defendant was read his rights by Officer Seoane at the scene of the crime.  The only reference to the defendant's being read his rights is on page 3, where the government states that the defendant was "advised of his rights" at the station and then made statements, "but not in response to any interrogation."  This statement was flatly contradicted by Officer Ross, who stated that he read the defendant his rights from a poster on the wall and proceeded to directly question him.[2]

Finally, the lengthy, detailed police report concerning Mr. Pridgen's arrest and the circumstances surrounding it, authored by Officer Seoane and attached as exhibit C, contains no reference to Mr. Pridgen's being read his rights by Officers Seoane or Ross, even though the defendant's statements are carefully recorded in the report.   Officer Seoane, a long-time veteran of the Boston Police, acknowledged that he understood the importance of a suspect's receiving his rights before being interrogated.  In a recent decision by Judge O'Toole in the case of United States v. Jill Doucette, Crim. No. 04-10135, attached as exhibit D, the court suppressed a defendant's statements in a situation where, similarly, there was no reference to the defendant's being given *Miranda* warnings in police reports.  Where "[t]he only evidence that supports a factual finding that the warnings were given is the agents' oral testimony, well after the events in question, that they were," the Court found that the government had not met its burden of

---

[2]At the hearing, neither officer could recall speaking to the prosecutor about responding to the defendant's motion.  The Court may infer, however, that the prosecutor must have spoken with one or both of them prior to writing a response, as the prosecutor denies the defendant's claim that an officer struck him in the head with a gun during his arrest, see exhibit B, Government's Opposition to Defendant's Motion to Suppress, p. 5.

proof that *Miranda* rights were given.   See *Memorandum and Order* on defendant's motion,

May 31, 2005, at p. 3.

In short, this court should find that the officers' testimony concerning Mr. Pridgen's

being given his rights was not credible.   Where the government has not proven that the

defendant was informed of his rights, his statements must be suppressed.   *Miranda v. Arizona*,

384 U.S. 436 (1966).

B.   The government has not proven that the defendant knowingly, intelligently, and
voluntarily waived his *Miranda* rights.

1. Law

The government bears the burden of proving, by a preponderance of the evidence, that a

defendant's waiver of his rights under *Miranda* was made knowingly, intelligently, and

voluntarily.   *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).   The inquiry as to whether the

government has met its burden has "two distinct dimensions," *Moran v. Burbine*, 475 U.S. 412,

421 (1986):

> First, the relinquishment of the right must have been voluntary in the sense that it was
> the product of a free and deliberate choice rather than intimidation, coercion, or
> deception.   Second, the waiver must have been made with a full awareness of both the
> nature of the right being abandoned and the consequences of the decision to abandon it.
> Only if the "totality of the circumstances surrounding the interrogation" reveal both an
> uncoerced choice and the requisite level of comprehension may a court properly
> conclude that *Miranda* rights have been waived.
> *Id*.

Thus, it is not enough for the government to show that a defendant was read his rights.

The government must also meet its "heavy burden" to prove that he knowingly and intelligently

waived them.   *Miranda*, 384 U.S. at 475; *Connelly*, 479 U.S. at 168; *Tague v. Louisiana*, 444

U.S. 469, 471 (1980) (burden not met where defendant was read rights, but no evidence

introduced to prove waiver); *United States v. Christian*, 571 F.2d 64 (1st Cir. 1978) (warnings and waiver "distinct questions" and "one cannot substitute for the other").  The First Circuit has stated that even ascertaining that an accused person understands their rights is not enough: "*Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them."  *United States v. Porter*, 764 F.2d 1, 7 (1st Cir. 1985); *United States v. Garcia*, 983 F.2d 1160, 1169 (1st Cir. 1993) (government must show clear intention, intelligently exercised, to relinquish known and understood right).

While silence alone cannot establish waiver, it is true that a defendant's silence, "coupled with an understanding of his rights and a course of conduct indicating waiver," may support a conclusion that a defendant has waived his rights.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979);  *Christian*, 571 F.2d at 68.   Although "the courts must presume that a defendant did not waive his rights," in "at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."  *Butler*, 441 U.S. at 373.  In *Bui v. DePaolo*, 170 F.2d 232, 240 (1st Cir. 1999), the Court outlined some of the circumstances in which an express waiver is not required, including when a defendant "spontaneously recommences the dialogue with his interviewers" after receiving his rights and asserting them; when a defendant's statements are made as "part of a back-and-forth conversation with the police"; or when a defendant responds "selectively to questions posed to him."  *Bui*, 170 F.3d at 240 (citations omitted).

   2.  Application of Law to Facts

Here, there simply was no evidence to indicate that the defendant either understood or knowingly waived his rights.  Neither officer testified that after reading Mr. Pridgen his rights,

they asked him anything to discern whether he understood them or wished to waive them. Nor was any evidence presented that this case is one in which an express waiver is not required because the circumstances indicate that the defendant understood and properly waived his rights.

It was established at the hearing that Mr. Pridgen was accosted by two officers as he was walking, not running, down a driveway. As Officer Ross ran up to him and put his hands on him, Mr. Pridgen put up his own hands and tried to back away. Both officers testified that rather than explaining anything to Mr. Pridgen, they simply "took him down," face-down on the ground, and handcuffed him. A third officer joined the other two almost immediately and assisted in restraining Mr. Pridgen. Officer Seoane testified that shortly thereafter, with numerous police arriving on the scene, and civilians such as Martha Holley standing by, he gave Mr. Pridgen his rights at the back of a cruiser and interrogated him there.

Thus, Officer Seone testified that after a sudden and forceful arrest, apparently without any explanation as to why he was being put face down on the ground and handcuffed, Mr. Pridgen was made to stand behind a cruiser in the middle of a chaotic scene, where he was read his rights. Officer Seoane offered no testimony concerning Mr. Pridgen's reaction to being read his rights, such as whether he nodded his head or indicated in any way that he understood what was being said to him. There was no "back and forth" conversation or "selective" response to questions, as the *Bui* court suggested might provide a factual basis for inferring that the defendant understood and knowingly waived his rights. *Bui*, 170 F.3d at 240. On the facts here, one cannot even discern whether Mr. Pridgen understood what was said to him, much less

whether he knowingly waived his rights.  See *Porter*, 764 F.2d at 7 (defendant's understanding rights not sufficient, waiver must also be proven).

Officer Ross, who testified that he read Mr. Pridgen his rights off a poster on the wall during booking before interrogating him,  also said nothing whatsoever to indicate that Mr. Pridgen understood or waived his rights.

The fact that Mr. Pridgen signed a *Miranda* form after being questioned by both Officers Ross and Seoane does not salvage the government's case here.  While the form does ask if the accused understands his rights, the form contains no waiver provision, see exhibit A.  Contrast *Christian*, 571 F. 2d at 67 (standard FBI form has waiver provision for accused to sign); *Hart v. Attorney General of Florida*, 323 F.3d 884, 891-92 (11th Cir. 2003) (defendant signed form indicating waiver).   Further, Officer Ross testified that Mr. Pridgen signed this form <u>after</u> making statements in response to his interrogation of him.

In sum, the government has not met its burden of showing that Mr. Pridgen understood or properly waived his rights before being subjected to custodial interrogation in this case. There has been no "clear showing of the intention, intelligently exercised, to relinquish a known and understood right." *Garcia*, 983 F.2d at 1169.   The defendant's motion to suppress his statements should be allowed.

MICHAEL PRIDGEN
By his attorney,

/s/ Page Kelley
Page Kelley
  B.B.O. #548237
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

Date: February 14, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 14, 2006.

 /s/ Page Kelley
Page Kelley