UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10375-RWZ

UNITED STATES OF AMERICA

v.

MICHAEL PRIDGEN

MEMORANDUM OF DECISION

March 3, 2006

ZOBEL, D.J.

Defendant Michael Pridgen moves to suppress statements he made to Boston Police officers on October 29, 2004, claiming that they were made without proper waiver of his right to remain silent. See Miranda v. Arizona, 384 U.S. 436 (1966). Specifically, Pridgen seeks to suppress statements he made at the time of his arrest at 8 Warren Place, Roxbury, and at the time of booking. The parties do not dispute that Pridgen was in custody when the statements were made and that they were elicited by police questioning. The dispute thus centers upon (1) whether Pridgen was properly informed of his rights before he made the statements, and (2) whether he knowingly and intelligently waived his right to remain silent.[1] The motion is allowed.

I.  Facts

---

[1] Pridgen's motion originally raised four grounds for suppressing the statements, but he renews only two of these in his post-hearing memorandum. Because I grant the motion on the basis of these two grounds, I need not consider the others.

After conducting an evidentiary hearing and reviewing the parties' papers, I find the following facts. On October 29, 2004, Boston Police Officers Michael Ross and Juan Seoane were on the second floor of the Roxbury District Court building, in Dudley Square, when, at approximately 10:55 a.m., they heard a few gun shots. Both officers immediately ran downstairs, where they observed several individuals in the courtyard, some of whom were running in different directions and some on the ground seeking cover. Both officers observed another officer pointing toward Warren Street, in the direction where it converges with Harrison Avenue. They ran down Warren Street in that direction, where other individuals pointed toward Warren Place, which intersects Warren Street and Harrison Avenue where they meet. A female construction worker told Officer Ross that she had seen a person run behind 8 Warren Place, which was under construction. Officer Ross, who was unarmed, and Officer Seoane, who was armed and had his gun drawn, approached 8 Warren Place. The front door of the house was slightly ajar, and Officer Seoane went to inspect the door and windows, while Officer Ross headed down the dirt driveway on the right side of the house. There he encountered Pridgen, who was walking toward Officer Ross, wearing blue jeans and a white t-shirt. As Ross called to Seoane for assistance, he tried to grab Pridgen, who pushed him away. Seoane holstered his gun, per department procedure, and then helped Ross force Pridgen to the ground. Neither Officer Ross nor Officer Seoane had handcuffs with them; Ross therefore stayed with Pridgen, while Seoane quickly searched the premises. Other officers soon arrived, and Pridgen was speedily handcuffed.

After Pridgen was handcuffed, Officer Ross went to the backyard of 8 Warren Place, observed fresh footprints, followed them, and saw a sweatshirt in a neighboring yard; eventually, the sweatshirt was retrieved and a gun found wrapped inside. In the meantime, Officer Seoane, who had remained with Pridgen, moved him from the driveway, to the street, next to a parked cruiser. Seoane testified that when he moved Pridgen to the cruiser, he saw the female construction worker who had directed them to 8 Warren Place, and that she nodded to indicate that Pridgen was the person she had earlier seen. Based on this seeming identification of the defendant, Seoane testified that he read Pridgen his Miranda rights and then immediately began questioning him. Officer Seoane's written report of the arrest, however, does not indicate that Pridgen was Mirandized at this time.

Eventually, Pridgen was transported to the police station for booking. Officers Ross and Linskey were continuously present throughout the booking procedure; Officer Seoane was present for part of the time, but was not there when Pridgen was read his Miranda rights or when he was questioned. Officer Ross testified that he read Pridgen his Miranda rights immediately upon arrival at the booking desk. Ross and Linskey then took Pridgen's information, his photographs, and his property, and Ross then questioned Pridgen as to "where he was, where he was coming from, what was he doing in that area." (Tr. 33). Pridgen answered his questions. After this exchange took place, Pridgen was—according to Officer Ross—given his Miranda warnings yet again, by Officer Linskey. This third warning was given in written form, on the Boston

3

Police Department's booking form; at the bottom of the form, Pridgen signed his name, indicating he understood the warning he had received. (Gov't Ex. 2).

II.    Discussion

There is no dispute that Pridgen was properly Mirandized by Officer Linskey when he read and signed the booking form. However, there is also no dispute that the statements at issue were made before Linskey's warning. Pridgen spoke to Officer Seoane at 8 Warren Place, before he was taken to the police station; his exchange with Officer Ross at the booking desk took place before the written Miranda form was executed. (Tr. 33). Therefore, the Miranda warning given by Officer Linskey is irrelevant for purposes of this motion. The real question is whether Pridgen was properly Mirandized by Seoane or Ross before he made any of the disputed statements. If not, the statements must be suppressed. See United States v. Faulkingham, 295 F.3d 85, 90 (1st Cir. 2002). The government, which bears the burden of proving that a Miranda waiver was given knowingly, e.g., United States v. Downs-Moses, 329 F.3d 253, 267 (1st Cir. 2003), must prove by a preponderance of the evidence that Pridgen was properly informed of his rights before he made any disputed statements, see, e.g., Moore v. Ballone, 488 F. Supp. 798, 804 (E.D. Va. 1980).

The only evidence that Pridgen was Mirandized by Seoane is Seoane's own testimony, just as the only evidence of Ross's Miranda warning is Ross's own testimony. Neither officer was present when the other allegedly Mirandized Pridgen.

(See Tr. 35; 86).[2]  Certain facts weigh against that testimony.  First, the otherwise thorough incident report prepared by Officer Seoane on the day of the arrest contains no mention that Miranda warnings were given to Pridgen, either by Seoane or Ross. (Def.'s Post-Hearing Mem., Ex. C).  Officer Seoane conceded that he would ordinarily include such information in an incident report, but that there had been "an oversight" in this case.  (Tr. 85, 90).  In such circumstances, such an omission "might signal a mere clerical error or it might support an inference that the event had not occurred, because if it had, it would have been recorded."  United States v. Doucette, No. 04-10135-GAO, Memorandum and Order, at 3 (D. Mass. May 31, 2005) (finding government had not proven that Miranda warnings were given in part because agent omitted the giving or witnessing of warnings from his report).

Second, Officer Ross testified that he and Officer Linskey were both present throughout the booking process and that, upon arrival at the booking desk, (1) Ross read Pridgen his Miranda rights, (2) he questioned Pridgen and Pridgen made certain statements in response, and (3) after he had questioned Pridgen, Officer Linskey again read Pridgen his Miranda rights and had him sign the Miranda form.  (Tr. 32-34, 42-45). Although possible, it is unclear why Officers Ross and Linskey, who together booked Pridgen, would have Mirandized him verbally, engaged in questioning, and then a few minutes later Mirandize him again, in written form, since Officer Ross admitted he had questioned the suspect and elicited responses (Tr. 33, 43-44).  This version of events

---

[2] Although Officer Ross testified that Officer Seoane read Pridgen his Miranda rights, Ross later clarified that he was not present when Seoane allegedly did so.

is also inconsistent with the government's assertion that Pridgen made statements "after being advised of his Miranda rights, but not in response to any interrogation" (Gov't Opp. 3),

Third, the officers' testimony conflicted.  Officer Ross stated that the Miranda warning he gave was separate from, and earlier than, the written Miranda warning given by Officer Linskey.  If true, this would immunize the verbal exchange between Ross and Pridgen that followed.  Although not present at the time, Officer Seoane believed that the warning given by Officer Ross at the booking desk and the written warning were one and the same (Tr. 90), raising the possibility that Ross's questioning of Pridgen may have occurred before the form was signed.  In light of these inconsistencies, and in light of the absence of any "objective, contemporaneous evidence that the warnings were given and waived," I find the officers' testimony to be insufficient to support the government's burden.  Doucette, No. 04-10135, at 3. Accordingly, the disputed statements are subject to the exclusionary rule.  See Faulkingham, 295 F.3d at 90.

In the alternative, the statements must be suppressed because the government has not shown that Pridgen knowingly and voluntarily waived his Miranda rights.  Even assuming Pridgen was properly warned of his rights, the government bears the burden of proving by a preponderance of the evidence that Pridgen knowingly, intelligently, and voluntarily waived his Miranda rights.  See United States v. Christian, 571 F.2d 64, 68 (1st Cir. 1978) ("[B]oth warnings and waiver are prerequisites.  One cannot substitute for the other."); Colorado v. Connelly, 479 U.S. 157, 168 (1986).  Here, the

6

government has offered no proof that Pridgen knowingly, intelligently, and voluntarily waived his Miranda rights. Neither officer testified that they asked Pridgen whether he wished to waive them. Officer Ross stated that every time he books a suspect at the police station, he reads them their rights and "make[s] sure they understand them." (Tr. 45). This statement, however, referred only to Ross's general practice, not specifically to whether Pridgen understood Ross's warning. More importantly, "[m]erely asking the accused whether he understood his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible." United States v. Porter, 764 F.2d 1, 7 (1st Cir. 1985). Instead, "Miranda requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." Id.

As for Officer Seoane, nowhere in this testimony did he state that he asked Pridgen whether he understood his rights or whether he wished to waive them. On the contrary, he testified that after informing Pridgen of his Miranda rights, he immediately launched into questioning Pridgen as to why he was at 8 Warren Place. (Tr. 100-01). The fact that Pridgen answered his questions, and the questions later posed by Ross at booking, do not establish waiver: "The fact that an individual has answered questions is, by itself, insufficient to establish a valid waiver because the responses may have been compelled by the very fact of custody or ongoing interrogation." United States v. Eaton, 890 F.2d 511, 515 (1st Cir. 1989).

Explicit waiver of Miranda rights is not always required. In some cases, a defendant's conduct and the surrounding circumstances may sufficiently indicate

7

waiver. See North Carolina v. Butler, 441 U.S. 369, 373 (1979). When a defendant expressly states that he knows his rights after receiving a Miranda warning and then goes on to make spontaneous, unsolicited statements, the Fifth Amendment does not require their exclusion. See Bui v. DiPaolo, 170 F.3d 232, 240-41 (1st Cir. 1999). Or when a defendant—after being expressly told not to make statements—proceeds to ask law enforcement officials about the charges against him, thereby engaging in a kind of "back and forth" dialogue, he may be found to have waived his Miranda rights. See United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998); Baskin v. Clark, 956 F.2d 142, 146 (7th Cir. 1992). The government has presented no evidence suggesting that similar circumstances exist in this case. Instead, the record is devoid of any indication that Pridgen expressly waived his Miranda rights, or that he did so implicitly, through conduct indicating that he understood and appreciated his rights and voluntarily, intelligently, and knowingly chose to waive them. On this record, the government has failed to sustain its burden.

In summary, I find that the statements made by Pridgen to Officer Seoane at 8 Warren Place and to Officer Ross at the booking desk must be excluded because Pridgen did not receive proper Miranda warnings, and he did not waive those rights.

III.   Conclusion

The motion to suppress (#23 on the docket) is allowed.


_____            /s/ Rya W. Zobel_____
    DATE                          RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE